(No. 30416.

THE SALINE BRANCH DRAINAGE DISTRICT *et al.,* Appellants, *vs.* THE URBANA-CHAMPAIGN SANITARY DISTRICT *et al.,* Appellees.

*Opinion filed January 22, 1948.*

CARSON & APPLEMAN, of Urbana, and SEARS & STREIT, of Chicago, (BARNABAS F. SEARS, and JOHN ALAN APPLEMAN, of counsel,) for appellants.

THOMAS & MULLIKEN, and GAIL R. FISHER, both of Champaign, and OLIN L. BROWDER, of Urbana, for appellees.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

This appeal is prosecuted to reverse a judgment entered in a declaratory action pending in the circuit court of Champaign County. A constitutional question was presented and passed upon by the trial court and is urged on review. Such fact supports jurisdiction by direct appeal.

The Saline Branch Drainage District, hereinafter referred to as the Saline district, was organized in 1906, pursuant to the provisions of the Levee Act, section 1 et seq. (Ill. Rev. Stat. 1947, chap. 42, par. 1 et seq.) It embraces approximately 20,000 acres, which includes farm lands adjoining the cities of Champaign and Urbana, a considerable part of the lands and lots within the corporate limits of Champaign, and all the lands and lots within the boundaries of the city of Urbana.

The Urbana-Champaign Sanitary District, hereinafter referred to as the Sanitary district, was organized in 1921 under the Sanitary District Act, (Ill. Rev. Stat. 1947, chap. 42, par. 299 et seq.) Its area includes the greater part of the lands and lots within the corporate limits of both cities. Thus a large area of the two cities is common to both districts.

The Saline district provides for storm-water drainage while the Sanitary district furnishes sewage disposal and sanitary drainage. The Saline district, organized as it is under the Levee Act, finances its operation by annual assessments on the property within its jurisdiction, which assessments are based on the benefits to be derived from the

service furnished. It is alleged that in years past the Saline district has caused assessments to be extended against both cities on account of the benefits accruing to streets, alleys and other city property and has by *mandamus* action compelled the payment of such assessments. The Sanitary district is authorized by statute to levy a tax by rate based on the assessed value of the property. It may, under certain circumstances, make improvements by special assessment. The inference deducible from the allegations of the complaint is that the cities are in favor of the Sanitary district assuming control of both the storm-water drainage and sewage disposal and that by the method of taxation which the Sanitary district may employ the cities would not be subject to tax for storm-water drainage.

The sole purpose of this action was to have a section of the Levee Act, added in 1941, under which property lying in two districts, as here, could be detached from the levee district, declared unconstitutional. If such detachment occurred as provided in the act, the detached territory would be within the jurisdiction of the Sanitary district for purposes of storm-water drainage.

On July 18, 1946, the Saline district and about seventy-five persons who were interested as property owners in one or both of the districts started this suit in the circuit court of Champaign County. They invoked the practice authorized by the Civil Practice Act (Ill. Rev. Stat. 1947, chap. 110, sec. 57½, par. 181.1,) and sought to have a declaration made declaring the detachment section of the Levee Act unconstitutional. The cities of Champaign and Urbana and the Sanitary district were made defendants. Their motions to dismiss the complaint were sustained and, after various amendments, the amended complaint filed December 19, 1946, was also dismissed on defendants' motions. The grounds alleged in support of the motions raised a question as to the propriety of a declaratory judgment in this case. On that point the court held against the

defendants but on the constitutionality of the detachment section of the Levee Act held that it was valid. Construing the provision for declaratory judgments as being available only for the purpose of making an affirmative declaration of rights as prayed in the complaint, a judgment was entered dismissing the complaint. This appeal followed. The constitutional question is preserved but, in view of the conclusion we have reached in applying the provision for declaratory judgments to this case, it will not be necessary to consider the validity of the statute.

The provision for declaratory judgments was added to the Civil Practice Act in 1945. It introduced a new phase of procedure into the practice in the courts of this State. It was designed to meet a real need by providing a speedy and inexpensive method of adjudicating legal disputes without resorting to the coercive and sometimes expensive procedure allowed by the former practice. Legislation enacted for such purpose should be liberally construed and applied so that the purposes intended will be accomplished. On the other hand, the application of the act must be restricted to questions that are within the province of a court to determine. It cannot be construed as authorizing a court to grant declarations of rights involving mere abstract propositions of law without regard to the interest of the parties in such questions, the giving of advice or the trying of moot questions. Such matters are not within the field of judicial determination.

The statute provides that courts "may in cases of actual controversy make binding declarations of rights, having the force of final judgments." It also provides that a "binding declaration of rights" may be granted regardless of whether any consequential relief is or could be claimed. Certain subjects are specifically mentioned on which rights may be declared but another sentence provides that such enumeration "shall not exclude other cases of actual controversy." The statute is clear that before a declaration

of rights may be made there must be an "actual controversy." We find that the complaint and the motions to strike do not show that an "actual controversy" exists between the Saline district and the individual plaintiffs on the one hand, and the two cities and the Sanitary district on the other.

Facts necessary to the development of such point will be stated. The pertinent parts of section 58c (par. 57b) of the Levee Act are that it authorizes the initiation of a detachment proceeding by the filing of a petition in the county court of the county in which the levee district was organized. The petition must be signed by at least one hundred landowners in the territory sought to be disconnected unless there are less than two hundred owners in such territory, then by a majority of such owners. The petition is to be verified by one of the signers and, after it is filed in the county court, it is set for hearing and notice given by posting and publication. On the hearing, landowners in said drainage district and all persons interested in said drainage district may file objections, and at the hearing thereof may appear and contest the detaching and disconnecting of said lands; and the objectors and petitioners may offer any competent evidence in regard thereto.

The statute prescribes the necessary findings on which to grant an order of detachment. They are: (a) that all or a part of the territory proposed to be detached is located within the boundaries of a sanitary district organized under the provisions of any statute, the organization of which has been effected subsequent to the organization of the levee district; (b) that such sanitary district is authorized by the act under which it is organized to construct drains, ditches and levees, and (c) has the power to levy and collect taxes for corporate purposes and has in each of the five years next preceding the filing of the petition made a levy for corporate purposes.

Reference was made in each of the two counts of the original complaint to the fact that Saline·district had within a year mandamused each of the cities to command the payment of the assessments of benefits extended against the city properties. It was alleged that as a result of such *mandamus* actions the cities and the Sanitary district had conspired to take from Saline district its jurisdiction of storm-water drainage in that part of the Saline district which was included in the Sanitary district, and that the municipalities had conspired to file a petition for detachment of such territory from the Saline district. The detachment petition had not been filed when the suit was started; however, when the amended complaint was filed five months later, such a petition had been filed in the county court of Champaign County.

The prayer of each of the five counts of the amended complaint asked the court to make a declaration of right holding section 58c unconstitutional. Consequential relief of a temporary and·permanent nature was asked in that it requested a temporary injunction "against the respondents named herein and all other persons and the County Court of Champaign County, Illinois, compelling them and each of them to desist and refrain from filing any matters in said County Court of Champaign County, Illinois, or from proceeding further in any matter now pending therein filed subsequent to the institution of this action, with reference to such contemplated detachment until this Court has fully adjudged the rights of the parties." It was also asked that the temporary relief be made permanent when and if there was a declaration of rights holding section 58c unconstitutional.

As stated, there was an unsuccessful attempt to plead facts showing the three municipalities had conspired to take from Saline district certain territory located in the cities and thereby destroy its prerogative of furnishing such territory storm-water drainage. It is not made clear as to how these municipalities could be guilty of a conspiracy in

this case. Without mentioning all the criticism that might be directed against the allegations charging conspiracy, we mention only the fact that if there was a conspiracy it was an act of the officers or agents of the municipality, committed outside the scope of their office and employment. They are not parties to this action. There is an allegation in which it is stated plaintiffs complain against the three municipalities "and their agents, representatives, officers, citizens and persons acting in consort with or aiding or abetting them." This was not sufficient to lay the foundation to make them defendants and it certainly would not support the prayer for a temporary injunction enjoining "the defendants named herein and all other persons and the County Court of Champaign County," etc.

Other than the allegation that the two cities and the Sanitary district had conspired to have a detachment petition filed in the county court, there is nothing to connect the defendants with the county court proceeding. If any benefit was to accrue to the cities by reason of having the storm-water drainage paid for by general tax rather than by special assessment, that was an incident that would follow a detachment of the property. It does not appear that the defendants are asserting any right to appear in the detachment proceeding in the county court or that they exercise any control over it. The pleading does not show that an "actual controversy" exists between the parties to this action and if an order should be entered declaring section 58c unconstitutional, it would be abstract in character and not binding on the parties who are prosecuting the detachment proceeding.

Reference to a provision of the statute on declaratory judgments confirms the construction we have given that there must be an actual controversy existing between the parties. Such provision is that the court shall refuse to enter a declaratory judgment where such judgment, if entered, will not terminate the controversy or some part

thereof giving rise to the proceeding. Any declaration of right entered in this cause declaring the act in question unconstitutional might be persuasive in the detachment proceeding in the county court, but it would not be binding on that court or the parties filing the petition in that case.

The fact that we have in this case discussed the effect of a declaration of right on the detachment proceeding pending in the county court should not be considered as giving approval to a declaratory action in one court when the principal cause is pending in another court. We refrain from the expression of any opinion on that subject in this case.

The judgment appealed from was correct in dismissing the complaint, and will be affirmed. However, such affirmance is on the grounds that this was not a case on which the court could consider the possibilities of granting a declaration of rights holding section 58c unconstitutional. We express no opinion as to the validity of the statute.

*Judgment affirmed.*