(No. 51066.—

ILLINOIS GAMEFOWL BREEDERS ASSOCIATION, Appellee, v. JOHN BLOCK, Director of Agriculture, Appellant.

*Opinion filed March 14, 1979.— Rehearing denied May 30, 1979.*

444

448

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel and Patricia Rosen, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Roger V. Pierson and Matthew A. Maloney, of Princeton, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Illinois Gamefowl Breeders Association, a not-for-profit Illinois corporation, filed an action for declaratory judgment pursuant to section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57.1) seeking a declaration that certain provisions of the Humane Care for Animals Act (Ill. Rev. Stat. 1975, ch. 8, par. 701 *et seq.*) were unconstitutional. Following the

submission of cross-motions for summary judgment, the Bureau County circuit court declared the challenged provisions unconstitutional. Defendant appealed directly to this court pursuant to our Rule 302(a). 58 Ill. 2d R. 302(a).

The Association exists for the purpose of uniting breeders and fanciers of gamefowl into a common organization, thereby benefiting its members by exchanging and distributing information and ideas concerning the perpetuation and improvement of the various breeds of gamefowl. Additionally, plaintiff alleges that it has a proprietary interest in the breeding, raising and selling of gamefowl and owns gamefowl. Finally, although the parties stipulated that the term "gamefowl" refers to chickens, plaintiff did allege in its complaint that "gamefowl are animals within the scope, meaning, intent and application" of the Act.

Section 4.01 of the Act provides in part:

"Sec. 4.01. (a) No person may own, capture, breed, train, or lease any animal which he or she knows or should know is intended for use in any show, exhibition, program, or other activity featuring or otherwise involving a fight between such animal and any other animal or the intentional killing of any animal for the purpose of sport, wagering, or entertainment.

(b) No person shall promote, conduct, carry on, advertise, collect money for or in any other manner assist or aid in the presentation for purposes of sport, wagering, or entertainment, any show, exhibition, program, or other activity involving a fight between two or more animals or the intentional killing of any animal.

(c) No person shall sell or offer for sale, ship, transport, or otherwise move, or deliver or receive any animal which he or she knows or should know has been captured, bred, or trained, or will be used, to fight another animal or be intentionally killed, for the purpose of sport, wagering, or entertainment." (Ill. Rev. Stat. 1975, ch. 8, pars. 704.01(a), (b), (c).)

Plaintiff challenged subsections (a) and (c) of section 4.01

and the corresponding penalty provisions in section 16 of the Act (Ill. Rev. Stat. 1975, ch. 8, par. 716). These sections essentially prohibit owning, breeding, training, selling, shipping or receiving animals which one knows or should know are intended to be used for fighting purposes. Plaintiff does not challenge the validity of subsection (b) of section 4.01, which actually prohibits animal fighting for sport, wagering or entertainment.

A preliminary question which must be addressed is whether plaintiff has standing to maintain an action for declaratory relief. This court discussed the two requirements for standing to bring a declaratory judgment action in *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371:

"First, there must be an 'actual controversy.' (Ill. Rev. Stat. 1973, ch. 110, par. 57.1(1).) 'Actual' in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.]

The second, and somewhat related requirement, is that the party seeking the declaration must be 'interested in the controversy.' (Ill. Rev. Stat. 1973, ch. 110, par. 57.1(1).) The word, 'interested' does not mean merely having a curiosity about or a concern for the outcome of the controversy. Rather, the party seeking relief must possess a personal claim, status, or right

which is capable of being affected. [Citations.]
The dispute must, therefore, touch the legal relations of parties who stand in a position adverse to one another." (66 Ill. 2d 371, 375-76.)
In order to preclude those persons having no interest in a controversy from bringing suit, it is necessary that one who challenges the constitutionality of a statute bring himself within the class as to whom the law is allegedly unconstitutional. (*Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 510-11; *People v. Bombacino* (1972), 51 Ill. 2d 17, 20; *Jaffe v. Cruttenden* (1952), 412 Ill. 606, 613.) To have standing, therefore, one must have sustained, or be in immediate danger of sustaining, a direct injury as a result of enforcement of the challenged statute. *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 550; *People v. Mayberry* (1976), 63 Ill. 2d 1, 6.

Despite a lack of clarity and directness in plaintiff's complaint and the use of conclusional allegations, we believe that plaintiff has demonstrated a sufficient interest to maintain this declaratory judgment action. Plaintiff has alleged that it owns gamefowl which are, admittedly, "animals" within the meaning of this Act. Since the Act only applies to animals which one knows or should know are intended to be used for animal fighting, plaintiff has, albeit indirectly, brought itself within the class allegedly aggrieved by the statute and is, therefore, "interested in the controversy" within the meaning of the declaratory judgment statute (Ill. Rev. Stat. 1975, ch. 110, par. 57.1(1)).

We also believe an "actual controversy" is present. (Ill. Rev. Stat. 1975, ch. 110, par. 57.1(1).) This requirement is intended to prevent the courts from granting declarations of rights involving only abstract propositions of law. (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375; *Beck v. Binks* (1960), 19 Ill. 2d 72, 74; *Exchange National Bank of Chicago v. County*

*of Cook* (1955), 6 Ill. 2d 419, 421.) It is necessary, however, to keep in mind the legislative purpose, which is to make possible a binding declaration of rights without requiring the parties to make an irrevocable change of position which might jeopardize those rights. *Richards v. Liquid Controls Corp.* (1975), 26 Ill. App. 3d 111, 130; *Charleston National Bank v. Muller* (1974), 16 Ill. App. 3d 380, 382.

The "actual controversy" requirement is meant merely to distinguish justiciable issues from abstract or hypothetical disputes and is not intended to prevent resolution of concrete disputes admitting of a definitive and immediate determination of the rights of the parties. (*A. S. & W. Club of Waukegan v. Drobnick* (1962), 26 Ill. 2d 521, 524.) The declaratory judgment remedy should be liberally applied and not restricted by unduly technical interpretations. (*Saline Branch Drainage District v. Urbana-Champaign Sanitary District* (1948), 399 Ill. 189, 192; *Department of Illinois Disabled American Veterans v. Bialczak* (1976), 38 Ill. App. 3d 848, 853.) Plaintiff has alleged that it owns "animals within the scope, meaning, intent and application" of the challenged statute. Such ownership raises the threat of potential criminal prosecution, and, in our judgment, is sufficient to entitle plaintiff to bring a declaratory judgment action challenging the constitutionality of the statute.

We turn, then, to the constitutional issues. The trial court held subsections (a) and (c) of section 4.01 and the companion penalty provisions in section 16 of the Humane Care for Animals Act unconstitutional as violative of the due process clauses of both the Federal and State constitutions. Both the trial court in its order and the plaintiff in its brief cited only one case in support of their position that these provisions are invalid. That case is the appellate court opinion in *Finish Line Express, Inc. v. City of Chicago* (1978), 59 Ill. App. 3d 419, a decision which

we reversed. (*Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 138.) Plainly, these provisions were enacted by the legislature pursuant to its police power in an effort to prevent the cruelty and gambling associated with animal fighting engaged in for "sport, wagering or entertainment." To constitute a legitimate exercise of the police power, this legislative enactment must bear a reasonable relationship to the public interest intended to be protected, and the means adopted must be a reasonable method of accomplishing the desired objective. (*Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 138; *Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 327.) Once the legislature determines that a problem exists and acts to protect and promote the general welfare of its citizens, the legislation is presumed to be a valid exercise of the State's police power. (*Union Cemetery Association v. Cooper* (1953), 414 Ill. 23, 32.) Furthermore, the due process clauses of the State and Federal constitutions, insofar as they operate to limit the exercise of the State's police power, prohibit only its arbitrary or unreasonable use. *City of Decatur v. Chasteen* (1960), 19 Ill. 2d 204, 210.

Plaintiff has challenged only subsections (a) and (c) of section 4.01, and has in effect conceded the validity of subsection (b), which prohibits animal fighting for purposes of sport, wagering or entertainment. Certainly subsection (b)'s prohibition of animal fighting is a valid exercise of the State's police power. Likewise, we believe the prohibitions contained in subsections (a) and (c) (*e.g.,* owning, breeding, training, selling or transporting) are reasonably related to the proper governmental purpose of eliminating the evils associated with animal fighting. Clearly, the legislature intended to strengthen the ban on animal fighting by making it illegal to knowingly engage in the supporting activities which make animal fighting possible, and the prohibitions contained in subsections (a)

and (c) were intended to insure that those who wish to stage such exhibitions will not be able to procure the needed animals from local breeders.

As this court stated in *S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70:

> "[I] f a law bears a reasonable relationship to a proper legislative purpose and is neither arbitrary nor discriminatory, the requirements of due process are met and the courts will not substitute their judgment for that of the legislature." 61 Ill. 2d 70, 77.

Plaintiff seems to believe that absolute criminal liability is imposed by the challenged subsections for the acts of a future owner, a belief in which plaintiff is clearly mistaken. The unambiguous language of the statute provides for criminal liability only where one engages in the prohibited conduct with knowledge, actual or imputed, that the animals had been, or are intended to be, used for fighting purposes. For example, mere custody of an animal which may have been trained or bred by another for fighting purposes is insufficient, standing alone, to constitute a violation of the Act. It must be established that the offender knew or should have known that the animal had once been intended or will be used for fighting purposes. Contrary to plaintiff's argument and the conclusion of the trial court, one who neither knows nor has reason to know that the animal with which he is concerned has been owned, captured, bred, trained or leased for fighting purposes or will be used for such purposes is not subject to prosecution under the challenged provisions.

Although the point was not raised by the parties, we feel it is important to emphasize the fact that our action in upholding the constitutionality of this act should pose no threat to the legitimate activities of hunters, fishermen and other sportsmen. In fact, section 13 of the Act provides explicitly that in case of conflict between this act and the

Game Code of Illinois (Ill. Rev. Stat. 1975, ch. 61, par. 1.1 *et seq.*), the provisions of the latter shall prevail. Ill. Rev. Stat. 1975, ch. 8, par. 713.

The judgment of the circuit court of Bureau County is accordingly reversed.

*Judgment reversed.*