DANIEL J. McCLELLAN, Indiv. and f/d/b/a Hybrid Seeds, Inc., *et al.*, Plaintiffs-Appellants, v. BANC MIDWEST, McLean County, N.A., f/k/a Corn Belt Bank, Defendant-Appellee.

Fourth District   No. 4—87—0305

Opinion filed December 31, 1987.—Rehearing denied January 26, 1988.

Law Offices of John H. Bisbee, of Macomb, for appellants.

Catherine A. Pratt, of Pratt & Sternberg, P.C., of Bloomington, for appellee.

JUSTICE LUND delivered the opinion of the court:

On motion of defendant Banc Midwest (bank), the circuit court of McLean County dismissed plaintiffs Daniel McClellan, Marialys McClellan and Hybrid Seeds, Inc.'s, amended complaint. Plaintiffs appeal.

The various counts of the complaint refer to an alleged agreement between the bank as lender and Daniel J. McClellan, Marialys McClellan, John P. Mathias, Barbara Mathias, and Hybrid Seeds, Inc., as borrowers. The financing was connected to the 1979 purchase by McClellans and Mathiases of Hybrid Seeds, Inc., an Iowa corporation. Counts I and II of the complaint are based upon breach of oral contract. The crux of the plaintiffs' allegation in these counts is that defendant violated its agreement to loan the contract price for Hybrid Seeds, Inc., in the amount of $760,000 over a period of seven years at the rate of $108,571.43 per year plus the yearly contract interest of 6% on the remaining balance. In essence, it was also alleged that the bank agreed to provide long-term financing for the operation of the seed business "as needed." It allegedly was understood that the business would eventually become profitable and that operation loans would continue until the profitability was established. There was an agreement as to the method of determining the rate of interest, and security was furnished.

According to the allegations, the initial one-year note was executed on December 3, 1979, in the amount $600,000. Various sums of money were borrowed pursuant to the agreement. Over the years, $1,455,000 was paid on principal, and $465,792.28 was paid as interest. In mid-1984, Hybrid Seeds was requested to reduce its then outstanding debt from $950,000 to $500,000. Subsequently, as will be explained later in this opinion, additional funds were advanced by the bank, but on or about February 1, 1985, the bank discontinued its relationship with the plaintiffs, calling all loans.

■■ ■ In considering a motion to dismiss, all well-pleaded facts, as well as the reasonable inferences which may be drawn from those facts, are taken as true. (*Morrow v. L. A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 468 N.E.2d 414.) Allegations of the complaint are to be interpreted in the light most favorable to the plaintiff. *Denkewalter v. Wolberg* (1980), 82 Ill. App. 3d 569, 402 N.E.2d 885.

■■ ■ A complaint based upon breach of contract must allege the existence of the contract purportedly breached by the defendant; the plaintiff's performance of all contractual conditions required of him; the fact of the defendant's alleged breach; and the existence of damages as a consequence. (*Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 946, 428 N.E.2d 1028, 1031; *Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 706, 491 N.E.2d 795, 799.) Allegations demonstrating the existence of a contract must contain facts indicating an offer, acceptance, and consideration. *Martin-Trigona*, 101 Ill. App. 3d at 946, 428 N.E.2d at 1031; *Wait*, 142 Ill. App. 3d at 706, 491 N.E.2d at 799.

■■ A valid cause of action for breach of an oral contract to lend money in the future is recognized in Illinois. (142 Ill. App. 3d at 707, 491 N.E.2d at 800; *Bank of Lincolnwood v. Comdisco, Inc.* (1982), 111 Ill. App. 3d 822, 444 N.E.2d 657.) The plaintiff must show that the alleged agreement contains sufficient definitiveness to be enforceable. (*Wait*, 142 Ill. App. 3d at 708, 491 N.E.2d at 801; *Carrico v. Delp* (1986), 141 Ill. App. 3d 684, 688, 490 N.E.2d 972, 975.) In *Wait* and *Carrico*, our court cited *McErlean v. Union National Bank* (1980), 90 Ill. App. 3d 1141, 414 N.E.2d 128, where the court held an agreement to loan money in the future was enforceable only if it contemplated the terms upon which the future loan should be made. That court stated:

> "These terms would include, for example, the intended duration of the line of credit; the applicable rate of interest to be charged for any loan emanating from such an agreement, or the basis for how such interest would be ascertained; what duration or date or dates were contemplated for maturity of such loans; and what mode or rate of repayment was contemplated, *i.e.*, whether the entire amount would be repayable or if repayment in installments would be acceptable." (90 Ill. App. 3d at 1146, 414 N.E.2d at 132.)

The trial court in the present case dismissed the complaint due to the failure of the complaint to show these specific terms.

We recognize that in some fact situations "duration" can be in-

ferred based on custom (*Wait*, 142 Ill. App. 3d at 709, 491 N.E.2d at 801), and part performance of an agreement may remove uncertainty and establish an enforceable contract. (*Yoder v. Rock Island Bank* (1977), 47 Ill. App. 3d 486, 491, 362 N.E.2d 68, 72.) We do not find that this can be done under the facts alleged in the plaintiffs' complaint.

Plaintiffs are seeking to enforce what is alleged to be an oral agreement to loan funds to pay for and finance a seed corn business. For the agreement to be binding, duration of the financing must be ascertainable. Plaintiffs argue the $760,000 cost was to be paid over seven years, and duration of the financing must then be at least seven years. The complaint does not set forth the payment terms of the "required" annual loans, nor does it provide for the method of paying interest costs. The operation financing, it is argued, must continue until the business is profitable. It would appear from plaintiffs' argument that the bank has agreed to pour money into the business operation *ad infinitum.*

■ We recognize the authorities which require lending institutions to comply with various lending agreements, but we also recognize that enforcing obscure commitments consistent with the borrower's later needs is inconsistent with the law of contracts. Theoretically, plaintiffs' contention could require the bank to advance all the purchase price, plus contractual interest, plus necessary operation capital. Regardless of the financial condition of the corporation, under this theory, at the end of the seven years, the bank could be holding notes in hundreds of thousands of dollars more than the worth of all corporate and individual assets. To infer a duration time, or a commitment time, based on the allegations of this complaint would be error. The lack of specific terms of the contract is fatal.

■ The remaining counts of the dismissed complaint, being counts III through IX, incorporate either paragraphs 1 through 33 of count I or paragraphs 1 through 37. The contract allegations are thus contained in every count. Count IV is not argued in plaintiffs' brief, and any alleged error is, therefore, waived. 107 Ill. 2d R. 341(e)(7).

Count III alleges fraudulent misrepresentation and relates to alleged bank actions during the period from approximately November 1, 1984, through February 1985. As alleged in counts I and II, the bank asked for a reduction of indebtedness in 1984. After the reduction of the indebtedness to $505,000, the bank first refused further credit. Under pressure from plaintiffs, the bank subsequently advanced $65,000 so that Hybrid Seeds could pay the 1984 harvest expenses. Plaintiffs were again advised no more funds would be advanced.

It is alleged that in November 1984, after advancing the $65,000, the bank discovered its failure to perfect certain security interests. The bank then suggested to plaintiffs it would be to their best interests to execute a new note for $195,000, rather than the $65,000 note, and to sign necessary security documents. All of the original debtors, except for Marialys McClellan, signed the documents. The complaint does not explain whether new funds were advanced for the $195,000 note or whether other notes were refinanced. Marialys refused to sign because of the bank's earlier statement of refusal to furnish additional sums of money.

The bank had dealings, according to the complaint, with plaintiffs' creditors, and, thereby, delayed involuntary bankruptcy proceedings. A new loan officer took over the account during the first week of January 1985, and it is alleged the bank "stated to the Plaintiffs that conditioned upon a new financing statement evidencing one hundred thousand dollars ($100,000) additional collateral, the Plaintiff MARIALYS McCLELLAN's signing the above described $195,000 note previously executed on November 7, 1984 by the Plaintiff DANIEL J. McCLELLAN, the Defendant CORN BELT BANK would 'consider' further extensions of credit to the Plaintiff HYBRID SEEDS, INC."

Marialys McClellan then signed the previously executed $195,000 note, and plaintiffs furnished a "current financial statement."

On or about February 11, 1985, after the security priority relating to the $195,000 was perfected, the bank discontinued the relationship with plaintiffs. It is basically this statement of facts upon which plaintiffs base their claim of fraudulent misrepresentation.

Our supreme court has articulated the necessary elements for this cause of action when it stated:

"As disclosed by decisions of this court, the elements of a cause of action for fraudulent misrepresentation (sometimes referred to as 'fraud and deceit' or 'deceit') are: (1) false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 333; *Roth v. Roth* (1970), 45 Ill. 2d 19, 23; *Roda v. Berko* (1948), 401 Ill. 335, 339-40; *Bennett v. Hodge* (1940), 374 Ill. 326, 332.) Furthermore, the reliance by the other party must be justified, *i.e.*, he must have had a right to rely." *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599, 601.

■ All but Marialys McClellan had signed the $195,000 note before the bank's January 1985 representation. No representation was made to continue the 1979 "agreement." This misrepresentation then could only affect Marialys' liability. We first consider whether she was justified in relying on a false statement of a material fact. The alleged false statement was that the "[b]ank would consider further extension of credit to the Plaintiff Hybrid Seeds, Inc." This was not a promise to continue loans. It was not a promise to make additional loans. It was not a promise to refrain from calling loans. Even though it may have been a sharp practice for purposes of protecting its security position, it was not such a representation as to justify reliance with an expectation of continuing financing.

■ Regardless of the justifiable reliance question, count III must fail as to Marialys because of the failure to properly allege damages. Because of our decision as to the 1979 contractual question set forth in our discussion of counts I and II, the damage issue must relate to other than those suffered because of the contractual failure. Marialys' damages would relate to a detrimental change in her financial status because of executing the $195,000 obligation. The execution may or may not have made a difference. In any case, no such damages are alleged. The trial court was correct in its dismissal of count III.

■ Counts V, VI, VII, and VIII relate in the same order to counts I, II, III, and IV and seek declaratory relief protecting plaintiffs from any deficiency. The trial court dismissed these counts, stating:

"That the declaratory judgement counts, except Count IX, duplicate the damage counts and all the declaratory judgement counts are based upon anticipated potential legal action being initiated in the future by defendant against plaintiffs and are therefore premature as no case or controversy presently exists between the parties to warrant a declaratory judgement determination."

The declaratory judgment counts, except for count IX, are each premised on the sufficiency of the allegations in the corresponding count seeking damages. We have, by this opinion, established that the premise does not exist. The dismissal was correct for this reason. We need not decide whether an actual controversy existed as to counts V, VI, VII, and VIII.

The last count of the complaint, count IX, sought a declaratory judgment, first repeating paragraphs 1 through 37 of count I and then referring to security agreements executed between plaintiffs and the bank, and alleged as follows:

"[41] That nevertheless, disregarding the requirements of UCC §9—504(3) (Notice) and UCC §9—504(1) (Sale of Collateral in a Commercially Reasonable Manner), and the specific contractual obligations of the bank, the bank after February 11, 1985, and while it was in the possession of all the assets of HYBRID SEEDS, INC:

   A. Failed to give appropriate written notice to Plaintiffs of the disposition of any collateral.

   B. Disposed of all the assets of HYBRID SEEDS, INC., without giving prior written notice to the Plaintiffs.

   C. Disposed of certain assets of HYBRID SEEDS, INC., in a commercially unreasonable manner.

   ■ That by reason of the Bank's failure to give appropriate written advance notice of the disposition of collateral and its failure to dispose of collateral in a commercially reasonable manner, the Bank has released the individual Plaintiffs herein of any further obligations."

The plaintiffs then seek a declaration of no deficiencies, request releases of mortgage liens, and seek an accounting of the proceeds from the sale of property.

As stated, count IX was dismissed for the reason that no case or controversy presently existed. We disagree.

We recognize the presence of many paragraphs in count IX which do not relate to the allegations of paragraph No. 41 and the claims for relief. We also recognize that the court may lack specificity in pleading. However, the reason for the dismissal was not based on these objections.

■ The elements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests, though there need not be any act in violation of these interests. (*Griffin v. County of Cook* (1938), 369 Ill. 380, 398, 16 N.E.2d 906, 915.)

   " 'Actual' in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the

controversy or some part thereof." (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375, 362 N.E.2d 298, 300.) The "actual controversy" requirement is meant to distinguish justiciable issues from abstract or hypothetical disputes and is not intended to prevent resolution of concrete disputes admitting of a definitive and immediate determination of the rights of the parties. (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 452, 389 N.E.2d 529, 532; *A. S. & W. Club v. Drobnick* (1962), 26 Ill. 2d 521, 524, 187 N.E.2d 247, 248.) It is necessary to keep in mind the legislative purpose, which is to make possible a binding declaration of rights without requiring the parties to make an irrevocable change of position which might jeopardize those rights. (*Illinois Gamefowl Breeders Association*, 75 Ill. 2d at 452, 389 N.E.2d at 532.) The declaratory judgment remedy should be liberally applied and not restricted by unduly technical interpretations. 75 Ill. 2d at 452, 389 N.E.2d at 532; *Saline Branch Drainage District v. Urbana-Champaign Sanitary District* (1948), 399 Ill. 189, 192, 77 N.E.2d 158, 160.

The court in *Roberts v. Roberts* (1967), 90 Ill. App. 2d 184, 187, 234 N.E.2d 372, 374, noted:

"The mere existence of a claim, assertion or challenge to plaintiff's legal interests, in which the ripening seeds of litigation may be seen and which cast doubt, insecurity, and uncertainty upon plaintiff's rights or status, damages plaintiff's pecuniary or material interests and establishes a condition of justiciability."

■■ In the present case, it is evident from the pleadings that the bank has sought recovery by liquidation of security interests. Whether the bank will attempt to recover a deficiency is not the only issue presented by paragraph No. 41 of count IX and the request for relief. The adjudication of the propriety of the sale of collateral, taken with the requests for release of mortgage liens, presents an actual controversy between the plaintiffs and defendant, as do the questions relating to accounting for proceeds from liquidation of security assets. The trial court's ruling as to count IX must be reversed.

In coming to this conclusion, we realize that count IX will be subject to motions to dismiss because of surplusage, the failure to plead sufficient facts relating to the method of sale of collateral, type of mortgage liens, and accounting. These motions are to be decided by the trial court. An amended count, consistent with the claims set forth by paragraph No. 41 and the claims for relief, will be required.

The trial court's order dismissing counts I through VIII with prej-

udice is affirmed. The part of the order dismissing count IX is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

GREEN, P.J., and SPITZ, J., concur.