181 Ill. App.3d 1081 (1989)
539 N.E.2d 779
STATE STREET BANK AND TRUST COMPANY OF QUINCY, Plaintiff-Appellant,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellee.
No. 4-88-0311.
Illinois Appellate Court  Fourth District.
Opinion filed May 17, 1989.
Jerry L. Brennan, of Keefe, Gorman & Brennan, of Quincy, for appellant.
Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Lawrence Moelmann, and Peter D. Sullivan, of counsel), for appellee.
Order affirmed.
JUSTICE GREEN delivered the opinion of the court:
This action was brought in the circuit court of Adams County by plaintiff State Street Bank and Trust Company (Bank) against defendant United States Fidelity and Guaranty Company (USF&G) for attorney fees and costs incurred by the Bank in defending an action *1082 against it. On April 21, 1988, the trial court entered an order granting USF&G's motion for summary judgment and denying a similar motion by the Bank. The plaintiff Bank appeals from that order. We affirm.
The Bank's second-amended complaint alleged: (1) in count I, that defendant breached its duty to defend the plaintiff in an action in the same court entitled O'Brien v. State Street Bank & Trust Co. (case No. 75-L-57); and (2) in count II, that defendant breached its duty to indemnify plaintiff for its attorney fees, costs, and other incidental expenses incurred by the Bank in defending in case No. 75-L-57. The alleged breach of duty in each of counts I and II is based upon a contract of insurance issued by defendant insuring plaintiff pursuant to a "Banker's Blanket Bond," commonly known as a fidelity bond.
The "INSURING AGREEMENTS" of the bond provide that the underwriter (USF&G) agrees to indemnify and hold harmless the insured (Bank) from that which in paragraph (A) thereof is described under the heading "FIDELITY" as:
"Loss through any dishonest or fraudulent act of any of the Employees, committed anywhere and whether committed alone or in collusion with others, including loss, through any such act of any of the Employees, of Property held by the Insured for any purpose or in any capacity and whether so held gratuitously or not and whether or not the Insured is liable therefor."
The policy also provides, under General Agreement D:
"The Underwriters will indemnify the Insured against court costs and reasonable attorney's fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this Bond." (Emphasis added.)
General Agreement D also gives USF&G the right to defend "at the underwriter's election."
In case No. 75-L-57, John O'Brien filed a two-count complaint wherein he alleged the Bank (1) intentionally and (2) negligently interfered with his existing and prospective business relationships. He alleged the Bank (1) by and through its agent. David Carey, an assistant vice-president of the Bank, made certain representations to him concerning a debt he owed the Bank; (2) later, contrary to Carey's representations, accelerated the due dates of debts which O'Brien owed it; (3) offset and seized O'Brien's bank accounts; (4) seized, repossessed *1083 and sold certain property belonging to O'Brien; and (5) confessed judgments against O'Brien as to various debts. O'Brien's complaint alleged these acts were (1) as to count I, wilful, wanton, intentional, malicious, reckless, and in bad faith; and (2) as to count II, negligent and careless and in bad faith. The trial court dismissed the complaint. On appeal, this court affirmed the dismissal of count II but reversed the dismissal of count I. This court held the additional assertion that the interference was wilful and intentional provided count I with necessary allegations to state a cause of action. (O'Brien v. State Street Bank & Trust Co. (1980), 82 Ill. App.3d 83, 401 N.E.2d 1356 (O'Brien I).) Upon remand, summary judgment was entered in favor of the Bank and affirmed by this court on appeal. O'Brien v. State Street Bank & Trust Co. (1986), 140 Ill. App.3d 1151 (order under Supreme Court Rule 23) (O'Brien II).
The Bank does not indicate it disputes the propriety of the summary judgment against it as to count I. In any event, we agree the court ruled properly. The instrument upon which plaintiff sought recovery was an indemnity bond and not a liability policy. The only provision in regard to defendant defending the plaintiff was the statement in General Agreement D giving defendant the right to defend "at the underwriter's election." In a case concerning the duty of an underwriter to defend an indemnitee under a similarly worded bond, the court held the underwriter had no duty to defend under the bond. Mortell v. Insurance Co. of North America (1983), 120 Ill. App.3d 1016, 458 N.E.2d 922.
In count II, the Bank sought indemnity for court costs and attorney fees in its defense of the O'Brien suit. As we have indicated, under General Agreement D, USF&G agreed to indemnify the Bank for "court costs and reasonable attorney's fees incurred * * * in defending any suit * * * brought against the [Bank] to enforce the [Bank's] liability or alleged liability on account of any * * * claim * * * which, if established * * * would constitute a valid and collectible loss * * * under the terms of this Bond." (Emphasis added.) Under the provision of paragraph (A) of the "INSURING AGREEMENTS" the bond indemnified the Bank for "[l]oss through any dishonest or fraudulent act of any of the Employees."
The Bank contends the complaint in case No. 75-L-57 alleged the Bank's employees were dishonest in the conduct upon which the cause of action purportedly arose. The Bank maintains that, accordingly, the complaint in case No. 75-L-57 set forth a claim recovery upon which would constitute a "valid and collectible loss" under paragraph (A), thus triggering the operation of General Agreement D and *1084 entitling the Bank to indemnity for attorney fees and court costs for its defense in case No. 75-L-57.
USF&G makes no contention that because the O'Brien complaint's charge of misconduct against Bank employees concerns misconduct directed against O'Brien rather than against the Bank, paragraph (A) of the "INSURING AGREEMENT" is not applicable to the Bank's exposure to liability in case No. 75-L-57. Rather, USF&G first asserts the Bank is precluded from recovery on count II because the allegations in the O'Brien lawsuit, if proved, would not constitute "fraud" or "dishonesty" within the meaning of the bond. This issue focuses upon the wording of the complaint and not upon evidence. USF&G points out that count II of the instant complaint mentions neither "fraud" nor "dishonesty." The second contention of USF&G is that the Bank's officers, directors, and attorneys authorized or acquiesced in Carey's acts, which were alleged to have been fraudulent or dishonest.
The Bank makes no contention that the O'Brien complaint alleged its employees acted fraudulently. Rather it contends the allegations were sufficient to charge them with being "dishonest" within the meaning of the bond. We need not decide whether the allegations of the O'Brien complaint were sufficient to charge employees of the Bank with being "dishonest." We agree with USF&G that the participation of high level officers of the Bank in a course of action determined at a high level to be in the best interests of the Bank prevents the Bank from obtaining indemnity for attorney fees and court costs under the "Fidelity" provisions of the bond.
The Illinois cases upon which USF&G relies are Mortell and Home Indemnity Co. v. Reynolds & Co. (1962), 38 Ill. App.2d 358, 187 N.E.2d 274. In Mortell, a bond somewhat similar to that here contained an express provision excluding from coverage losses of the insured "attributable to acts of its `managing body.'" (Mortell, 120 Ill. App.3d at 1026, 458 N.E.2d at 929.) Accordingly, the court held no indemnity for attorney fees and costs arose when an insured defended against allegations charging the indemnitees' partners with fraud. (Mortell, 120 Ill. App.3d at 1027, 458 N.E.2d at 930.) In Home Indemnity, reference is made to a rule of law whereby partners in a firm selling securities would not be able to obtain indemnity for attorney fees incurred in defending litigation resulting from fraud of the firm's sales force, if the partners had acquiesced in the fraud. The court held that to allow indemnity would permit the partnership to profit from its own wrong. Home Indemnity, 38 Ill. App.2d at 375, 187 N.E.2d at 283.
*1085 Of the cases cited by USF&G precluding coverage because of participation of officers or directors in the transaction giving rise to the loss, the most nearly applicable is Farmers & Merchants State Bank v. St. Paul Fire & Marine Insurance Co. (1976), 309 Minn. 14, 242 N.W.2d 840. There, the reviewing court held that a bonding company was not required to indemnify an indemnitee for attorney fees incurred in defending an action against the indemnitee arising from a transaction in which active directors of the indemnitee took part. That court stated that indemnification would have been required absent the participation of the directors. The opinion indicated that the bond there contained provisions very similar to those here.
The Bank presents no case authority for holding the issuer of a fidelity bond to indemnify the obligee on the bond for expenses incurred in defending a suit against the obligee for conduct of employees resulting from a high level decision as to the policy to be followed by the obligee. Rather, the Bank cites First National Bank v. Fidelity & Casualty Co. (5th Cir.1981), 634 F.2d 1000. There, a suit was brought against a bank alleging damages resulting from a forgery and check-kiting scheme engaged in by a director of the bank assisted by the president and chair of the board of directors. That bank prevailed in that action and then brought suit against the obligor on its fiduciary bond for indemnity for expenses of defending the suit. The obligor defended on the basis that the bank had continually maintained the bank president had not participated in the fraud. The circuit court of appeals held subsequent conduct of the bank in upholding the conduct of its president did not negate a duty on the obligor to indemnify the bank. However, there, unlike here, the record did not indicate a high level decision by the bank had approved the conduct of its president which was alleged to be fraudulent.
For the purpose of making our decision here in regard to coverage for indemnification for attorney fees, we consider not only the allegations of the complaint, but also the evidence of the conduct of the Bank's officers as shown by the evidence of record at the time of the hearing on the motion for summary judgment. (Maryland Casualty Co. v. Chicago & North Western Transportation Co. (1984), 126 Ill. App.3d 150, 156, 466 N.E.2d 1091, 1095; Farmers & Merchants State Bank v. St. Paul Fire & Marine Insurance Co. (1976), 309 Minn. 14, 242 N.W.2d 840.) That evidence shows that not only Carey, but also the president of the Bank, who was a director, and an attorney for the Bank, participated in the various transactions which O'Brien unsuccessfully attempted to prove constituted the tort of unlawful interference with a contractual relationship.
*1086 Unlike in Farmers & Merchants State Bank, we do not have a participation by a majority of the governing board of the Bank. We do not deem participation of directors to be determinative. As individuals, directors do not act on behalf of their corporation. Such a board can act only as a group and by resolution. However, where, as here, a high level decision is made to enhance the position of the corporate body involved, to require the obligor on the fiduciary bond to indemnify the corporation for expenses incurred in defending the action would make the bond a liability policy (without obligation to defend) for high level corporate acts deemed to be dishonest or in fraud of customers. A fiduciary bond is not intended to have such coverage.
Accordingly, we affirm.
Affirmed.
KNECHT, J., concurs.
JUSTICE LUND, specially concurring:

THE ISSUE
It is my opinion that the plaintiff seeks to extend coverage of the "Bankers Blanket Bond" beyond what it clearly intended. After providing for the losses covered by the bond, there is a provision allowing indemnity for attorney fees incurred "on account of any loss, claim or damage which, if established against the insured would constitute a valid and collectible loss sustained by the insured under the terms of this bond, in event of such loss." The issue is whether case No. 75-L-57 stated a cause of action which, if established, would result in a loss covered by the terms of the bond.

RULES OF CONSTRUCTION
The rules of construction applicable to bonds are generally consistent with those applying to insurance contracts. (10 Am.Jur.2d Banks § 84 (1963).) Generally, an insurance contract, in case of doubt as to meaning thereof, shall be interpreted against the party who has drawn it, which, as in this case, is usually the insurance company. (43 Am.Jur.2d Insurance § 283 (1982).) This rule does not conflict with the rule that insurance contracts should be construed to carry out the true intention of the parties. (43 Am.Jur.2d Insurance § 285 (1982).) Where the policy is specific as to subject matter or coverage, it cannot be extended by implication. 43 Am.Jur.2d Insurance § 281 (1982).

*1087 THE BOND LOSS COVERAGE
A careful examination of the bond indicates the specific coverage intended. The loss coverage is described under the heading "INSURING AGREEMENTS." Paragraph (A) is entitled "FIDELITY" and refers to the "[l]oss through any dishonest or fraudulent act of any of the Employees." Paragraph (B) covers "[l]oss of Property * * * through robbery, burglary * * * larceny * * * misplacement, mysterious unexplained disappearance." Paragraph (C) covers those losses listed in paragraph (B) happening when property is in transit. Paragraph (D) covers "[l]oss through FORGERY OR ALTERATION." Paragraph (E) covers loss of securities. Paragraph (F) covers loss related to redeeming forged United States savings bonds. Paragraph (G) covers loss to the bank resulting from counterfeit currency. None of the coverage relates, in any way, to bank business decisions or taking action relating to loan collections.

PROPER INTERPRETATION OF THE COVERAGE
Paragraph (A), as stated, is entitled "FIDELITY."
"Fidelity insurance is that form of insurance in which the insurer undertakes to guaranty the fidelity of an officer, agent, or employee of the assured, or rather to indemnify the latter for losses caused by dishonesty or a want of fidelity on the part of such a person. People v. Rose, 147 Ill. 310, 51 N.E. 246, 44 L.R.A. 124." Black's Law Dictionary 943 (4th ed. rev. 1968).
The case No. 75-L-57 complaint used terms such as "wilful," "wanton," "intentional," "malicious," "reckless," "negligent," "careless," and "bad faith," but the action was based on a bank employee calling and collecting loans on behalf of the bank. This cause of action is somewhat similar to those in Wait v. First Midwest Bank/Danville (1986), 142 Ill. App.3d 703, 491 N.E.2d 795, McClellan v. Banc Midwest (1987), 164 Ill. App.3d 304, 517 N.E.2d 762, and Champaign National Bank v. Landers Seed (1988), 165 Ill. App.3d 1090, 519 N.E.2d 957. The conduct alleged necessarily involved business decisions on behalf of the banks, were not alleged to be ultra vires, and had no relationship to direct losses to the bank caused by an employee's dishonest or fraudulent action.
The plaintiff would extend coverage of the bond to alleged wrongful actions of employees performing their duties for the bank. These alleged actions could even financially benefit the banks, i.e., preventing greater loan losses. The bond's "INSURING AGREEMENTS" read, as a whole, leave no doubt as to the intended coverage. It does not include business decisions made on behalf of the bank by the *1088 bank's agents, regardless of approval by high level officials of the bank. Any other decision improperly allows coverage implications and conflicts with the obvious intention of the parties. The policy is specific as to the subject matter and coverage.