■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM J. MINK, Appellant. [655 NYS2d 115] —Peters, J. Appeal from a judgment of the County Court of Columbia County (Leaman, J.), rendered May 1, 1995, upon a verdict convicting defendant of the crime of possession of fighting animals.

On August 12, 1994, Victor Bailly and Mark McDonald, special agents for the American Society for the Prevention of Cruelty to Animals (hereinafter the ASPCA), accompanied by informant Juan Molina and 10 live roosters, pursued an undercover investigation of defendant, who was suspected of unlawfully housing fighting animals in Columbia County in violation of Agriculture and Markets Law § 351 (3) (b). They approached the dirt road driveway leading to defendant's home after turning off a country road and driving onto another dirt road. McDonald stayed with the van while Bailly and Molina, carrying a rooster, walked up the driveway. None of these roads were posted, fenced or gated.

Recognizing Molina, defendant's wife demanded, in English, to know why he came without calling first, explaining that her husband would be quite upset. Since Molina spoke no English, Bailly intervened and told her that due to an emergency, they

---

needed to drop off some birds to hide them from the ASPCA. Defendant's wife directed them to defendant's location by pointing to a dirt road leading to the farm. Bailly and Molina proceeded thereupon until they encountered defendant. As expected, he was angry and demanded to know who Molina had brought with him. Bailly told defendant that he was Molina's cousin and that since the ASPCA had raided Molina's home in the Bronx, they needed a place to house the 10 roosters that they had with them.

Defendant indicated his awareness of the raids in New York City and explained that he was in the process of building new cages to accommodate those people who had to bring their fighting birds to him. While conversing, Bailly noted numerous outside cages, housing birds which had their wattles and crests cut and which were shaved on the chest and leg area, all suggesting that they were used as fighting birds.[1] Defendant refused to take the birds from Molina at that time since Molina owed him money for his prior housing of birds. Accordingly, Molina and Bailly agreed that they would come back the next day with $500.

Based primarily upon observations made during this visit, a warrant was issued and a search of the premises was conducted on October 6, 1994. During the search, business records and hundreds of roosters were seized, many of which had to be euthanized due to their condition. Defendant admitted to an ASPCA official that he had "inherited" the business of warehousing fighting roosters from his grandfather.

Indicted on one count of cruelty to animals in violation of Agriculture and Markets Law § 353 and one count of possession of fighting animals in violation of Agriculture and Markets Law § 351 (3) (b), defendant was tried by a jury and convicted of possession of fighting animals. Sentenced to 10 days in jail and fined $5,000, he now appeals.

On this appeal, defendant has not challenged the legal sufficiency of the trial evidence. Since it is well settled that a conviction based upon legally sufficient evidence precludes a review of the sufficiency of the evidence before the Grand Jury (*see*, CPL 210.30 [6]), we decline to address defendant's first contention (*see*, *People v Schulze*, 224 AD2d 729, *lv denied* 88 NY2d 853).

---

1. Bailly testified that the wattle and the crest of a fighting bird are cut because, if left as is, the crest and wattle may be injured during the fight, causing excessive bleeding. If the bird bleeds too much, it becomes weaker as the fight progresses. The chest of the birds are shaved so that puncture wounds which may occur during the fight can be more easily detected and treated.

As to the denial of the suppression motion, we find that the People, who had the burden of showing the legality of the police conduct in the first instance, sufficiently established by clear and convincing evidence that defendant voluntarily consented to the presence of Molina and Bailly upon his property (*see, People v Whitehurst*, 25 NY2d 389). Bailly's initial venture was limited to observations of defendant's land and outbuildings, with the information gleaned therefrom readily available to any casual visitor. The dirt road leading to defendant's property was neither posted with any signs or notices to prevent public access nor enclosed by a fence or gate. Rather than ordering Bailly off the property, defendant's wife directed him to defendant. While, admittedly, defendant was angry to discover that Bailly had accompanied Molina to the farm, he never ordered him off the property.

Similarly unavailing are defendant's contentions that the warrant was defective. Alleging that the application was based upon an unsworn affidavit and, therefore, should have been subjected to an *Aguilar-Spinelli* analysis (*Spinelli v United States*, 393 US 410; *Aguilar v State of Texas*, 378 US 108), we find the application to have been supported by, *inter alia*, the sworn affidavits of both William Kilgallon, a confidential investigator in the Attorney-General's office, and Bailly. Since the information supplied in such application came not from a confidential informant but from a disclosed informant and from personal observations, the *Aguilar-Spinelli* test is inapplicable. We further find the description of the premises on the warrant to be sufficiently precise (*see, People v Earl*, 138 AD2d 839, *lv denied* 71 NY2d 1026) and that defendant has failed to support his contention that purportedly false or unreliable information proffered in support of the warrant was knowingly, intentionally or recklessly made (*see, People v Lavin*, 220 AD2d 886, *lv denied* 87 NY2d 904; *People v Quinones*, 139 AD2d 774, *lv denied* 72 NY2d 923).

Defendant's argument that 7 USC § 2156 preempts Agriculture and Markets Law § 351 is also misplaced. The Federal statute essentially makes it unlawful to use interstate commerce to, *inter alia*, promote animal fighting ventures. With respect to live birds, however, such activity is unlawful "only if the fight is to take place in a State where it would be in violation of the laws thereof" (7 USC § 2156 [d]). By the language therein utilized, we find no basis to conclude that Congress intended to preempt the field. As noted by the Utah Court of Appeals, 7 USC § 2156 "does [not] preclude the state of origination from enacting laws prohibiting the keeping, raising or us-

ing of animals for such activities" (*West Val. City v Streeter*, 849 P2d 613, 618; *see, Commonwealth v Gonzalez*, 403 Pa Super 157, 588 A2d 528).

We must also reject defendant's contention that Agriculture and Markets Law § 351 is unconstitutionally vague. We find the statute, which specifically prohibits "[t]he owning, possessing or keeping of any animal under circumstances evincing an intent that such animal engage in animal fighting" (Agriculture and Markets Law § 351 [3] [b]), to be "sufficiently definite to provide a person of ordinary intelligence with fair notice of any prohibited conduct" (*Matter of Saratoga Water Servs. v Saratoga County Water Auth.*, 190 AD2d 40, 44, *affd* 83 NY2d 205). Since defendant made admissions to providing shelter for fighting animals, these admissions, coupled with further objective physical evidence, demonstrate that he engaged in precisely the type of activity that this statute was designed to prohibit.[2]

We have carefully considered defendant's remaining contentions, which include the charge to the jury, and find them to be lacking in merit.

Mikoll, J. P., Casey, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.

---

2. Legislation strikingly similar to that challenged here has been upheld by courts across the country (*see, Commonwealth v Balog*, 448 Pa Super 480, 672 A2d 319, *lv denied* 545 Pa 660, 681 A2d 176, *cert denied* — US —, 117 S Ct 987 [Feb. 18, 1997]; *Illinois Gamefowl Breeders Assn. v Block*, 75 Ill 2d 443, 389 NE2d 529).