(No. 62447.—)

THE PEOPLE *ex rel.* WILLIAM KEMPINERS, Director of Public Health, Appellant, v. STEVEN DRAPER *et al.*, Appellees.

*Opinion filed September 17, 1986.*

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones-Stewart, Solicitor General, and James P. Nally, Assistant Attorney General, of Chicago, of counsel), for the People.

C. Robert Hall, of Carbondale, for appellee Steven Draper.

JUSTICE SIMON delivered the opinion of the court:

The Mobile Home and Mobile Home Park Act (Ill. Rev. Stat. 1985, ch. 111½, par. 711 *et seq.*) (the Mobile Home Act) provides for State licensing of the construction and operation of mobile-home parks, sets forth substantive health and safety standards which such parks are required to meet, and gives prosecuting authorities the power to seek criminal sanctions and injunctive relief against anyone who violates the Act. Section 26 states, however, that the "Act does not apply within the jurisdiction of any home rule unit." (Ill. Rev. Stat. 1985, ch. 111½, par. 736.) In January 1984, the State of Illinois, on the relation of William Kempiners, the then-director of the Illinois Department of Public Health, filed an action in the circuit court of Jackson County attempting to enjoin the operation of an unlicensed mobile-home park operated by defendant Draper. The park is located outside, but within one-half mile of the corporate limits of, the city of Carbondale, which is a home rule unit.

Draper moved to dismiss, arguing that the Mobile Home Act does not by its terms apply within the jurisdiction of a home rule unit and that his park is within Carbondale's "extraterritorial" jurisdiction; the circuit judge granted the motion. The appellate court affirmed with one justice dissenting (137 Ill. App. 3d 25), and we allowed the State's petition for leave to appeal (103 Ill.

2d R. 315).

Section 7—4—1 of the Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 7—4—1) grants limited extraterritorial powers to municipalities:

"The corporate authorities in all municipalities have jurisdiction in and over all places within one-half mile of the corporate limits for the purpose of enforcing health and quarantine ordinances and regulations."

The question in this case is whether, as the defendant claims and the circuit and appellate courts held, the one-half-mile enforcement "belt" created by this statute is "within the jurisdiction" of a home rule unit for purposes of section 26 of the Mobile Home Act.

The premise underlying the defendant's position is that the term "jurisdiction" as used in the Mobile Home Act is properly defined by reference to section 7—4—1 of the Municipal Code. The appeal of this argument lies in the fact that the word "jurisdiction" appears in both statutes; we believe, though, that "jurisdiction" as used in section 26 of the Mobile Home Act does not derive its meaning from the above-quoted provision but rather refers only to the area within the corporate limits of a municipality.

The defendant looks too far afield in relying on the extraterritorial authority of municipalities to exempt his park from State regulation. Examination of the Mobile Home Act itself suggests instead that the legislature only intended to preclude State licensing of mobile homes within the corporate limits of home rule units. Section 18 of the Act states that, "[i]n addition to the [State] license provided in Section 3 of this Act, any county or municipality in this State may provide for the licensing of a mobile-home park *within its corporate limits* ***." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 111½, par. 728.) In order to avoid rendering nugatory the provision that local licensing is authorized within

"corporate limits," we must read this statute as barring any extraterritorial licensing of mobile-home parks. This specific provision, of course, controls over the general grant of extraterritorial authority to enforce health and quarantine regulations contained in the Municipal Code. Since municipalities, including home rule units, may not license parks located beyond their corporate limits, a park in the half-mile belt cannot be considered to be "within the jurisdiction" of the home rule unit.

In any event, there is no reason to think that the legislature intended to expand the jurisdiction of a home rule unit for purposes of the Mobile Home Act exemption by reference to section 7—4—1 of the Municipal Code. That statute grants extraterritorial powers to *all* municipalities, not just home rule municipalities, and gives no such authority to those counties which have home rule status. It is therefore clearly not tailor-made for defining the jurisdiction of home rule units. *Cf. City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483 (no reasonable basis for distinguishing between home rule units and other municipalities as to extraterritorial enforcement of zoning ordinances).

Even if we assumed that the Mobile Home Act does not specifically bar extraterritorial licensing of mobile-home parks and that such licensing is possible under the provisions of section 7—4—1 of the Municipal Code, we could not agree with the defendant that the belt is within the jurisdiction of Carbondale for purposes of exempting it from State regulation. This reading of the statutes overlooks the significant difference between the ordinary jurisdiction of a municipality and the extraordinary authority to act beyond municipal boundaries granted in section 7—4—1. That section does not create general municipal authority in the one-half-mile belt surrounding the municipality. Rather, the grant is quite limited by its terms: the municipality has extraterritorial

jurisdiction only "for the purpose of enforcing its health and quarantine ordinances and regulations." We do not believe that this limited jurisdiction was intended to give meaning to the term "jurisdiction" as used in section 26 of the Mobile Home Act so as to bar State regulation outside the corporate limits.

Our conclusion that State regulation of mobile-home parks is not precluded in the half-mile belt surrounding home rule municipalities is consonant with the policies underlying both the grant of extraterritorial authority in section 7—4—1 and the Mobile Home Act. Extraterritorial power to enforce health regulations is usually granted to eliminate "nuisances existing outside corporate limits but causing annoyance to residents within the municipality." (Mathews, Municipal Ordinances sec. 1.11, at 12 (2d ed. 1983); see also Anderson, *The Extraterritorial Powers of Cities*, 10 Minn. L. Rev. 475 (1926); Goodman, *The Legal Basis of Extraterritorial Zoning in Oklahoma*, 4 Tulsa L.J. 21 (1967); Bouwsma, *The Validity of Extraterritorial Municipal Zoning*, 8 Vand. L. Rev. 806 (1955).) When municipal residents are threatened by a health hazard existing outside municipal borders, the municipality clearly has an incentive to act. The same cannot be said, though, of problems which affect only or primarily those who live outside the corporate limits and are neither voters nor taxpayers. As long as extraterritorial mobile-home parks pose no peril for residents of a city, it is unlikely that jurisdiction will be exercised and municipal resources expended in licensing them. It makes little sense to suggest that the legislature, which sought to ensure "quality housing" through proper regulation of mobile-home parks (Ill. Rev. Stat. 1985, ch. 111½, par. 711(5)), surrendered the State's authority to regulate in the belt surrounding home rule units based on potential municipal enforcement under section 7—4—1 without regard to whether the municipality has any in-

centive to regulate. As we read the Act, the State may require compliance with its licensing scheme except within the corporate limits of a home rule unit.

For the reasons stated, the judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court of Jackson County for further proceedings consistent with this opinion.

*Reversed and remanded.*