HARRIS BANK OF ROSELLE, as Trustee, *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF METTAWA, Defendant-Appellant.

Second District   No. 2—92—0624

Opinion filed March 22, 1993.

Julius Abler, of Lake Forest, and Arthur M. Holtzman and James K. Stucko, both of Pedersen & Houpt, P.C., of Chicago, for appellant.

Margaret M. Borcia, of Morrison & Morrison, P.C., of Waukegan, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiffs, Harris Bank of Roselle, as trustee under trust agreement 12672, dated August 10, 1987, and Newton Korhumel, filed a complaint in the circuit court of Lake County, pursuant to section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—701), seeking a declaration that the Village of Mettawa Ordinances Nos. 192 and 198 were void with respect to a particular parcel of plaintiffs' property. Defendant, the Village of Mettawa, timely appeals from orders denying defendant's motions to dismiss both counts of plaintiffs' complaint (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(9)) and granting plaintiffs' motion for summary judgment.

Defendant raises the following issues on appeal: (1) whether the trial court erred in concluding plaintiffs had standing to bring the underlying action; (2) whether the trial court erred in concluding that plaintiffs had sustained their burden of proof in overcoming the presumptive validity of Ordinances Nos. 192 and 198; (3) whether village Ordinance No. 192 was within the statutory authority of the village; (4) whether the trial court erred in concluding that village Ordinance No. 192, which had extraterritorial effect, was unenforceable as to plaintiffs' property because it was beyond the home rule powers of the village; and (5) whether the trial court erred in concluding that village Ordinance No. 198, which had extraterritorial effect, was unenforceable as to plaintiffs' property because it amounted to zoning and not road control and because the ordinance violated plaintiffs' due process rights.

Plaintiff Harris Bank of Roselle, as trustee for the benefit of plaintiff Newton Korhumel and his family, holds legal title to the subject property in this action, an 84-acre parcel of unincorporated, vacant land located in Lake County bordered by Interstate 94 to the east, Illinois Route 60 to the south and Bradley Road to the west. This parcel is located outside, but adjacent to, the corporate limits of the Village of Mettawa. The subject property is not served by a sanitary sewer, and North Shore Sanitation has refused to extend service to the property.

Defendant is a home rule municipal corporation located in Lake County. Portions of Bradley Road are within the municipal boundaries of the village. The municipal boundary of the village, containing a portion of Bradley Road, abuts plaintiffs' property. Bradley Road is a public, two-lane road running from Illinois Route 60 north to Illinois Route 176. The portion of Bradley Road located south of I-94 is accessed by properties currently zoned for single-family residences, including plaintiffs' property. The portion of Bradley Road located north of I-94 is accessed by properties zoned for a number of uses, including office and research, industrial and residential. Bradley Road provides the sole means of access to plaintiffs' property. A parcel of land, known as the Bennett property, is located within the corporate boundaries of the village and is zoned residential. On October 16, 1990, by Ordinance No. 3—90, the village approved a proposal for construction of a residential housing project on the Bennett property, finding that approval for such a plan was in the best interests of the Village of Mettawa. The Bennett development will implement a wastewater treatment system.

On January 22, 1991, defendant passed Ordinance No. 192, which provides in part:

"ARTICLE II. SANITARY SEWAGE.

*SECTION 8.201. Treatment By Irrigation Prohibited.* Within the corporate limits of the Village of Mettawa and the territory adjoining it between Bradley Road and the Illinois Toll Road (Interstate 94) ***:

A. It shall be unlawful for any person, firm, or corporation to permit and/or cause to be permitted the treatment of sanitary sewerage and/or sanitary wastewater by irrigation; and

B. No person, firm, or corporation shall undertake to treat sanitary sewerage and/or sanitary wastewater by means of irrigation of any type, including but not limited to spray irrigation.

*SECTION 8.202. Definitions.*
    ***

B. ***

1. 'Irrigation' including 'Spray Irrigation', shall mean the moistening of the surface of land with treated or untreated sanitary sewerage and including any land treatment type sanitary sewerage facility whether or not such facility has received the approvals required by the Northeastern Illinois Planning Commission, the Illinois Environmental Protection Agency, or any other governmental entity, but excluding sanitary sewerage septic systems.

2. 'Sanitary Sewerage' and/or 'Sanitary Wastewater', shall mean a combination of the water-carried wastes from residences, business buildings, institutions, and other establishments.

*SECTION 8.203. Penalties.* Any person, firm or corporation who violates or aids and abets in the violation of any of the provisions of this Article is guilty of a misdemeanor ***."

Plaintiffs' property is wholly contained within the extraterritorial areas Ordinance No. 192 specifically purports to regulate.

On September 3, 1991, plaintiffs filed a petition for rezoning of the subject property, from "E" zoning to "U" zoning, to permit its development as an office campus. The petition further requested that the Lake County board grant the subject property a conditional use permit for a wastewater land treatment facility. Section 3.05 of the Wastewater Land Treatment Site Regulation Act (Ill. Rev. Stat. 1991, ch. 111½, par. 583.05) further required plaintiffs to obtain a permit from the Illinois Environmental Protection

Agency prior to establishing, operating, managing or maintaining the wastewater land treatment system which they proposed to utilize for the development.

On November 13, 1991, defendant approved resolution No. 91—8 protesting and objecting to the proposed rezoning and the issuance of a conditional use permit with respect to plaintiffs' property. A copy of this ordinance was submitted by defendants to the Lake County zoning board of appeals during hearings on plaintiffs' rezoning petition.

On November 20, 1991, defendant approved Ordinance No. 198, which provides, in part:

> "*ACCESS TO ROADS* *** 1. The Village roads named above [Little St. Mary's Road, Old School Road and Bradley Road] may be accessed only from single family residential properties and from areas platted and containing single family residences."

On November 20, 1991, defendant also prepared a memorandum of law directed to the Lake County zoning board of appeals regarding plaintiffs' rezoning petition, entitled "Mettawa's Memorandum of Law on Access to its Roads," indicating the position that the village can deny access to its road, or limit it to single-family dwellings. A copy of Ordinance No. 198 was attached, and both items were filed with the zoning board of appeals on the following day. A copy of Ordinance No. 192 was also filed with the zoning board of appeals during proceedings pertaining to the plaintiffs' petition for rezoning. On December 18, 1991, plaintiffs initiated an action for declaratory judgment which underlies this appeal.

On March 6, 1992, the Lake County zoning board of appeals voted to recommend that the Lake County board deny the petition for rezoning and request for conditional use permit with respect to the subject property. The zoning board of appeals stated that it had received reports, recommendations and correspondence from a number of sources, including the Village of Mettawa, and that it had considered the testimony at the public hearings and the recommendations from interested official bodies in making its recommendation. On April 14, 1992, the Lake County board voted to deny the petition for rezoning and request for conditional use permit for plaintiffs' property. Plaintiffs filed suit challenging the decision on July 7, 1992.

On April 24, 1992, the circuit court granted plaintiffs' motion for summary judgment, concluding: (1) that Ordinance No. 192 was unconstitutional as applied to plaintiffs' property in that defendant

lacked specific statutory authority to enact an ordinance of its nature which regulates matters outside the municipality; (2) that Ordinance No. 198 was unconstitutional as applied to plaintiffs' property because its application to the property was not in the nature of road control, but rather zoning, and defendant lacks statutory authority to regulate such matters beyond municipal boundaries; and (3) that Ordinance No. 198 was unconstitutional as applied to plaintiffs' property because its application to the property caused a substantial deprivation of access to the property without due process of law.

Defendant first contends that plaintiffs lacked standing to bring the underlying action for declaratory judgment. Defendant filed three separate section 2—619 motions to dismiss. The first, filed prior to its answer, challenged standing on the theory that neither ordinance applied to plaintiffs' residentially zoned property. The second and third motions were filed subsequent to the zoning board of appeals' decision to recommend against rezoning of the property, and the county board's denial of the rezoning request, respectively. Both motions challenged standing while claiming, in the alternative, that subsequent events had rendered any actual controversy moot. All three motions were denied by the trial court.

When reviewing a section 2—619 motion to dismiss, the trial court must take all properly pleaded facts as true. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 505; *People ex rel. Hartigan v. Knecht Services, Inc.* (1991), 216 Ill. App. 3d 843, 860.) Thus, the appellate court is concerned only with questions of law presented by the pleadings. *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554; *Hartigan*, 216 Ill. App. 3d at 860.

■■ For standing to exist in a declaratory judgment action concerning the construction of a municipal ordinance, two requirements must be satisfied: (1) there must be an "actual controversy," and (2) the party seeking declaration of rights must be "interested in the controversy." Ill. Rev. Stat. 1991, ch. 110, par. 2—701; *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375-76; *Metroweb Corp. v. County of Lake* (1985), 130 Ill. App. 3d 934, 936.

■■ "Interested parties" are not merely those who have a curiosity about or a concern for the outcome of the controversy, but rather those parties possessing a personal claim, status, or right which is capable of being affected. (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 450-51, citing *Underground Contractors*, 66 Ill. 2d at 375-76.) Therefore, a plaintiff seeking to

challenge the constitutionality of a municipal ordinance must demonstrate inclusion within the class as to whom it is allegedly unconstitutional (*Gamefowl Breeders*, 75 Ill. 2d at 451) by having sustained, or being in immediate danger of sustaining, direct injury as a result of enforcement of the challenged statute (*Gamefowl Breeders*, 75 Ill. 2d at 451; *Metroweb*, 130 Ill. App. 3d at 936).

We conclude that plaintiffs are "interested parties," as required by section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—701). Ordinance No. 192 expressly prohibits private treatment of wastewater and sewerage by irrigation within the municipal boundaries of the Village of Mettawa and on certain lands adjoining the village. It is undisputed that plaintiffs' property is located within those specified areas. With respect to Ordinance No. 198, it is undisputed that the sole point of access for the subject property is provided by a portion of Bradley Road and further that Ordinance No. 198 purports to limit access to that portion of Bradley Road solely to residential properties. Plaintiffs' property, therefore, is within the description of property allegedly affected by these ordinances, and plaintiffs, as the owners of that property, are "interested parties."

Defendant mistakenly relies on the *Metroweb* case for its position that plaintiffs lacked standing to maintain the underlying action because they lack "real interest." In *Metroweb* this court concluded that a party holding a lease contingent upon rezoning of certain property lacked a possessory interest sufficient to challenge the denial of rezoning. (*Metroweb*, 130 Ill. App. 3d at 937-39; see also *Illinois Municipal League v. Illinois State Labor Relations Board* (1986), 140 Ill. App. 3d 592, 606.) This is unlike the present case in which plaintiffs' possessory interest in the property is undisputed.

Defendant argues that no actual controversy exists with respect to the two village ordinances because the planned development is prohibited under the current zoning of the subject property. "Actual controversy" does not require that a wrong be committed and injury inflicted; it requires a showing that issues and disputes underlying the action are neither moot nor premature. This requirement is intended to prevent the courts from granting declarations of rights involving only abstract propositions of law. (*Gamefowl Breeders*, 75 Ill. 2d at 450-51, citing *Underground Contractors*, 66 Ill. 2d at 375.) The remedy of declaratory judgment is designed to settle and fix rights before there has been an irrevocable change of position of the parties in disregard of their respective claims of right.

(*Gamefowl Breeders*, 75 Ill. 2d at 452; *City of Chicago v. Department of Human Rights* (1986), 141 Ill. App. 3d 165, 170.) The "actual controversy" requirement is not intended to prevent resolution of concrete disputes admitting of a definitive and immediate determination of the rights of the parties. The declaratory judgment remedy should be liberally applied and not restricted by unduly technical interpretations. *Gamefowl Breeders*, 75 Ill. 2d at 452.

Ordinance No. 192 clearly purports to prohibit the use of wastewater land treatment systems on plaintiffs' property. This prohibition is independent of zoning restrictions. Plaintiffs have taken substantial steps towards development of the subject property as an office campus, including attempting to rezone their property to permit office and research use and obtain permits necessary to operate a wastewater land treatment facility to service the planned office campus development. Defendant argues that until rezoning has occurred and a conditional use permit issued, Ordinance No. 192 is inapplicable to the subject property and no actual controversy exists. This argument is based upon a logical fallacy. Like the Lake County zoning regulations, and the need for IEPA and county use permits, Ordinance No. 192 acts as a barrier to the proposed development of the subject property. As with a door secured by several locks, each individually acts as a barrier, regardless of whether the others remain intact. Because Ordinance No. 192 operates to prohibit the planned development's wastewater land treatment system, an actual controversy exists concerning the application of Ordinance No. 192 to the subject property.

With respect to Ordinance No. 198, it is undisputed that this ordinance was passed subsequent to the filing of plaintiffs' petitions for rezoning. Defendant filed this ordinance with the Lake County zoning board of appeals along with a memorandum of law concerning the village's authority to limit or deny access to its road. Defendant has asserted that it will deny plaintiffs the sole means of access to the subject property if it is not developed for single-family residences. Plaintiffs argue that Ordinance No. 198 is tantamount to zoning of their property by the village. Plaintiffs have standing to challenge Ordinance No. 198 to the extent that it acts as a "zoning" ordinance, just as they would have standing to challenge any zoning ordinance prohibiting the intended use of their property. (*Cf. Urann v. Village of Hinsdale* (1964), 30 Ill. 2d 170.) Furthermore, standing could be based on the factors similar to those we have discussed concerning plaintiffs' standing to challenge Ordinance No.

192. Regardless of the village's true motivation in enacting this ordinance, an "actual controversy" exists between the parties.

As to defendant's contention that rezoning must first be obtained as a condition precedent to challenging the ordinances, we further note that requiring plaintiffs to expend the resources necessary to secure rezoning and use permits for the proposed development, only to find their efforts are for naught because of the enforceability of these ordinances, would defeat the legislative purpose behind permitting declaratory relief, particularly where the issues and facts are as refined and clear as they are in this matter.

Although defendant has not raised the issue of mootness on appeal, we note that it is an issue of jurisdiction which must be addressed. (*In re B.D.* (1991), 212 Ill. App. 3d 251, 253-54.) The general rule is that when a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved, or when the substantial questions involved in the trial court no longer exist, it will dismiss the appeal. (*People ex rel. Foreman v. Village of North Barrington* (1989), 191 Ill. App. 3d 544, 555.) The crux of defendant's argument to the trial court with respect to mootness was that because plaintiffs failed to obtain rezoning, the planned development could not proceed, and any issues with respect to Ordinances Nos. 192 and 198 were rendered moot because the planned development was barred. This argument begs the question. Under this same logic, plaintiffs' declaratory action challenging the denial of their rezoning petition could also be determined moot because the village ordinances prohibit the proposed development which underlies the need for rezoning. The decisions of the Lake County zoning board of appeals and Lake County board are independent of questions regarding the enforceability of the village's ordinances, and they do not render the controversy in this action moot.

The remaining arguments raised by defendant question the trial court's grant of plaintiffs' motion for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005). The summary judgment issues on appeal may be summarized as follows: (1) whether the trial court erred in concluding, as a matter of law, that Ordinance No. 192 was unconstitutional as it pertained to the subject property because the extraterritorial aspect of that regulation was beyond the authority of the village's home rule powers; (2) whether the trial court erred in concluding as a matter of law that Ordinance No. 198 was unconstitutional as to the property because its extraterritorial ef-

fect was tantamount to a zoning regulation which was beyond the authority of the village's home-rule powers; and (3) whether the trial court erred in concluding, as a matter of law, that Ordinance No. 198 was unconstitutional as to the property because its enforcement caused substantial deprivation of access to the property without due process of law.

Summary judgment is a drastic remedy, and it must be granted only when the movant's right to judgment as a matter of law is absolutely clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Summary judgment should be granted by the trial court only when it is satisfied that the pleadings, affidavits and other evidence present no genuine issue of material fact. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 420-21; *In re Estate of Marks* (1991), 211 Ill. App. 3d 53, 61.) A reviewing court's task is to determine (1) whether the trial court correctly concluded that there were no genuine issues of material fact, and, if so, (2) whether judgment for the moving party was correct as a matter of law. *Estate of Marks*, 211 Ill. App. 3d at 61; *International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.* (1988), 177 Ill. App. 3d 555, 571.

Both parties agree that there were no issues of material fact based upon the record before the trial court. Also, the construction of a statute, ordinance, or constitutional provision is a question of law which is independently determined by the reviewing court. (*Monahan v. Village of Hinsdale* (1991), 210 Ill. App. 3d 985, 993.) Thus, summary judgment was the proper vehicle for resolving this action, and we must review, *de novo*, whether plaintiffs were entitled to summary judgment. See *Outboard Marine Corp. v. Liberty Mutual Insurance* (1992), 154 Ill. 2d 90, 102.

■■ The general powers of home rule units are set out under section 6 of article VII of the Illinois Constitution:

"§6. Powers of Home Rule Units.

(a) *** Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare ***

* * *

(i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the

State's exercise to be exclusive." Ill. Const. 1970, art. VII, §6.

■■ Defendant contends that enacting Ordinance No. 192 is within the scope of these home rule powers and that section 7 of the Statute on Statutes (Ill. Rev. Stat. 1991, ch. 1, par. 1106) provides that home rule powers under paragraph (i) of section 6 of article VII of the Illinois Constitution may not be limited or denied by legislation enacted after January 12, 1977, except through specific language. Defendant discusses the village's authorization to regulate sewerage treatment under the powers of home rule units, how those powers are exercised concurrently with any State regulation of the same subject matter, and how home-rule powers cannot be limited or denied except through specific legislative language. These arguments are immaterial because this action concerns solely the *extraterritorial* nature of Ordinance No. 192. Section 6 of article VII of the Illinois Constitution, which delineates the powers of home rule units, does not authorize home rule units to enact extraterritorial regulations such as those involved in the present action. "Absent an *express* grant of statutory authority, a municipality may not exercise extraterritorial governmental power." (Emphasis added.) *Village of Lisle v. Action Outdoor Advertising Co.* (1989), 188 Ill. App. 3d 751, 760; see also *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 77-78; *City of Galena v. Dunn* (1991), 222 Ill. App. 3d 112, 121.

Defendant asserts that the extraterritorial scope of Ordinance No. 192 is specifically authorized by section 7—4—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1991, ch. 24, par. 7—4—1), which provides:

"§7—4—1. The corporate authorities in all municipalities have jurisdiction in and over all places within one-half mile of the corporate limits for the purpose of enforcing health and quarantine ordinances and regulations."

"[Section 7—4—1] grants extraterritorial powers to *all* municipalities, not just home rule municipalities" (emphasis in original) (*People ex rel. Kempiners v. Draper* (1986), 113 Ill. 2d 318, 321), and there is no reasonable basis for distinguishing between the home rule units and other municipalities as to the extraterritorial enforcement of ordinances enacted under that grant of regulatory authority (*City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 485-86).

■ Any municipal attempt to exercise extraterritorial power is always subject to the requirements that the ordinance (1) be passed

pursuant to legislative authority, (2) constitute a valid exercise of the police power, and (3) bear a reasonable relation to the public health, safety and welfare. (*Galena*, 222 Ill. App. 3d at 121.) Further, where there is a State law relating to the subject, an exercise of police power by a municipality must be in harmony with such law. *Village of Oakwood Hills v. Diamond* (1984), 125 Ill. App. 3d 58, 61.

■ With respect to the latter, it is undisputed that, prior to implementing the proposed wastewater land treatment system on the subject property, plaintiffs must satisfy the requirements of the Wastewater Land Treatment Site Regulation Act. (See Ill. Rev. Stat. 1991, ch. 111½, pars. 581 through 590.) Ordinance No. 192 creates a blanket prohibition barring the operation of wastewater land treatment systems on the subject property. In our opinion, such absolute prohibition, without provision for exception or review based on such circumstances as the type of system proposed or the site involved, must be distinguished from a legitimate attempt to contemporaneously regulate such systems, for example by requiring village-issued use permits to be obtained in addition to those required by the State and county. While the latter example could arguably be characterized as regulation which is concurrent or harmonious with the Wastewater Land Treatment Site Regulation Act, the former, employed in Ordinance No. 192, is not a regulation which supplements the State's regulatory authority. Instead, it usurps such authority by attempting to render the village's regulation of the subject matter exclusive and final. In this regard, Ordinance No. 192 is invalid as applied to the subject property.

■ Furthermore, it is our opinion that the extraterritorial operation of Ordinance No. 192 is not a "health or quarantine ordinance or regulation" within the meaning of section 7—4—1 of the Illinois Municipal Code. (See Ill. Rev. Stat. 1991, ch. 24, par. 7—4—1.) Defendant asserts that prohibiting the treatment of sanitary sewerage and/or sanitary wastewater by means of irrigation relates to matters of public health and thereby qualifies as a "health and quarantine" regulation. One of the fundamental tenets of statutory construction is that a court must, whenever possible, attribute some reasonable meaning to every word, clause or section of a statute; each provision and word should be given reasonable meaning; and a statute will not be presumed to contain surplusage within its provisions. (*Jensen Disposal Co. v. Town of Warren* (1991), 218 Ill. App. 3d 483, 490.) "Public health" is a term of art in municipal law in that it defines one of the basic limitations on general municipal au-

thority. All municipal regulations, whether territorial or extraterritorial, are subject to the requirement that they (1) are passed pursuant to legislative authority, (2) constitute a valid exercise of municipal police powers, and (3) bear a reasonable and substantial relation to the public health, safety or general welfare. (*Galena*, 222 Ill. App. 3d at 121-22, citing *Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 244.) If this court were to adopt defendant's interpretation that the term "health," as used in section 7—4—1, equates to "public health," as generally defined in municipal law, we would render the term redundant. Further, we find it inexplicable that the legislature would specifically use the word "health" if it intended to refer to the broad, general term of "public health" while omitting reference to "safety" or "welfare." It is apparent that "health," as the term is used in section 7—4—1, is intended to have some more specific meaning.

The term "health" is not defined in section 7—4—1, nor has its meaning been judicially interpreted. Thus, we are guided by both the plain meaning of the statute's language and legislative intent. (See *In re Application of County Collector* (1989), 181 Ill. App. 3d 345, 348.) To determine legislative intent, statutory language is examined as a whole, and each part is considered in connection with every other part. (*Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477, 484.) Section 7—4—1 uses the terms "health" and "quarantine" in a related manner. In this context, "health" has a common and plain meaning: "of, relating to, or engaged in welfare work directed to the cure and prevention of disease." (Webster's Third New International Dictionary 1043 (1986).) This interpretation is supported by the limited case law arising from section 7—4—1, which was previously codified as section I of article 8 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1947, ch. 24, par. 8—1). The majority of those cases deal with municipalities attempting to license and regulate the production and pasteurization of dairy products distributed and sold in their jurisdiction. See, *e.g., Dean Milk Co. v. City of Elgin* (1950), 405 Ill. 204; *Higgins v. City of Galesburg* (1948), 401 Ill. 87; see also *Kempiners*, 113 Ill. 2d at 322 ("[e]xtraterritorial power to enforce health regulation is usually granted to eliminate 'nuisances existing outside corporate limits but causing annoyance to residents within the municipality.' [Citations.] When municipal residents are threatened by a health hazard existing outside municipal borders, the municipality clearly has an incentive to act").

While sewerage treatment may be generally related to matters of "public health," we do not believe that section 7—4—1 authority

to enact health and quarantine ordinances authorizes municipalities to regulate extraterritorial sanitation management in the method employed by Ordinance No. 192. Although defendant has cited authority, relative to the relationship sanitary management has to the "public health, safety and welfare," which bears on the ordinance's reasonableness, we need not address that concern because Ordinance No. 192 is invalid for the reasons we have discussed above. Defendant has cited no authority which supports characterizing Ordinance No. 192 as a "health and quarantine" regulation, and we decline to broaden those terms beyond their common usage to include the enactment in question. If a municipality wishes to enact and enforce extraterritorial regulations, it must act under the color of a *specific, express* grant of statutory authority. (*Commercial National Bank*, 89 Ill. 2d at 77-78.) Such authorization is lacking with respect to the application of Ordinance No. 192 to the subject property. The trial court correctly granted summary judgment with respect to count I of the complaint.

Defendant next argues that Ordinance No. 198 was enacted pursuant to the village's home rule powers under section 6 of article VII of the Illinois Constitution and further that such exercise is consistent with the provisions of the Illinois Highway Code (Ill. Rev. Stat. 1991, ch. 121, par. 1—101 *et seq.*) and the Illinois Municipal Code (Ill. Rev. Stat. 1991, ch. 24, par. 1—1—1 *et seq.*). A preliminary review of the ordinance would suggest that it regulates property solely within the municipality's territorial limits, but upon careful examination it is clear that the ordinance has direct, extraterritorial impact because it purports to deny access to Bradley Road for certain extraterritorial lands, including the subject property, if such properties are not single-family residential properties or properties platted and containing single-family residences.

Defendants have admitted that Ordinance No. 198 has extraterritorial effect, even to the point of preparing a memorandum of law regarding Ordinance No. 198 and its enforceability with respect to the subject property on the very day the ordinance was enacted. As previously noted, the municipal exercise of extraterritorial governmental power must be supported by an express grant of statutory authority. (*Commercial National Bank*, 89 Ill. 2d at 77-78.) Defendant has cited no authority to support the extraterritorial scope of Ordinance No. 198.

As noted by the trial court, denying the plaintiffs access to their property unless it is developed as single-family residential property is tantamount to zoning of the subject property by the vil-

lage. "Zoning restrictions are of two categories: (1) the nature of the use which may be made of the property, *i.e.*, residential, industrial or commercial, and (2) restrictions on height, bulk and area. The two are frequently considered together." (*Galena*, 222 Ill. App. 3d at 120.) The Village of Mettawa, despite its status as a home rule municipality, has no authority to zone property which lies outside its territorial limits. *County of Will v. City of Naperville* (1992), 226 Ill. App. 3d 662, 665.

In response to plaintiffs' position that Ordinance No. 198, with respect to the subject property, is effectively a zoning ordinance, defendants argue that Ordinance No. 198 is not titled a zoning ordinance and that its language does not indicate a zoning purpose behind this ordinance. We are not persuaded by either argument. Defendant contends that the purpose behind Ordinance No. 198 is to eliminate problems arising from congested traffic. This has been recognized as an important purpose behind zoning regulations (see *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 383); however, issues of the overall constitutionality and general enforceability of Ordinance No. 198 are not before this court. Rather, we are concerned with the *extraterritorial* scope of this regulation solely as it applies to the subject property.

■■ It is undisputed that the property's sole access is through Bradley Road, that Ordinance No. 198 purports to regulate the subject properties' access to Bradley Road, and that if Ordinance No. 198 is given effect with respect to the property, the plaintiffs' use of it will be restricted solely to single-family residences. Therefore, as applied to the subject property, Ordinance No. 198 effectively operates to zone for use solely as to single-family residences. This ordinance was enacted after the initiation of the plaintiffs' rezoning attempts. The memorandum of law prepared on the same day of this ordinance's enactment clearly demonstrates that the village was aware of the effect it would have on the property despite the title of the ordinance, its stated purpose, and the motivations behind its enactment. We conclude that Ordinance No. 198 is invalid with respect to the subject property because its extraterritorial scope was beyond the village's authority.

Moreover, we agree with the trial court's conclusion that Ordinance No. 198 as applied to plaintiffs' property is invalid because it denies the plaintiffs due process of law. In particular, Ordinance No. 198 denies the subject property the possibility of industrial, commercial, or multifamily residential use by denying access to the property for those uses. This amounts to a substantial deprivation

which is not balanced in any way, for example, by providing for the possibility of rezoning, or by compensation. We conclude that the trial court correctly granted summary judgment with respect to count II of the complaint.

Finally, in reaching this result we have considered defendant's motion to strike portions of plaintiffs' brief. Concerning point one of the motion, we note that the disputed comments are merely legal argument. We are able to ascertain the legitimacy of such conclusions and find it unnecessary to strike them. With respect to point two of the motion, we will consider the issues raised by plaintiffs and sustain the trial court's judgment based thereupon despite the lack of a cross-appeal because the entirety of the judgment entered was in the plaintiffs' favor. (See *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 386-87.) Defendant's motion to strike is therefore denied.

Based on the foregoing, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

GEIGER and BOWMAN, JJ., concur.